UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TAMMATHA C.,[1]<br><br>              Petitioner,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>              Respondent. | Case No. 1:21-CV-00185-DKG<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

## INTRODUCTION

Petitioner brought this matter for judicial review of Respondent's denial of her application for benefits under Title II of the Social Security Act for a period of disability beginning December 12, 2012. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons set forth below, the Court will affirm the decision of the Commissioner.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On December 13, 2016, Petitioner protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act. (AR 178.) She alleged a disability onset date of December 12, 2012, due to physical and mental impairments, including back injury, shoulder injury, neck injury, and migraines. (AR 181.) Petitioner's application was denied upon initial review and on reconsideration. (AR 178.)

A hearing before Administrative Law Judge (ALJ) Russell Wolff took place on March 22, 2018, at which he heard testimony from Petitioner, Petitioner's spouse, and an impartial vocational expert. (AR 102 – 149; 178 – 188.) On June 5, 2018, ALJ Wolff issued a written decision finding Petitioner was not under a disability from December 12, 2012, the alleged onset date, through September 30, 2017, the date last insured, and therefore found Petitioner is not disabled. (AR 188.) On September 18, 2019, the Appeals Council remanded the matter, directing the ALJ to obtain additional evidence concerning the period at issue. (AR 195, 13.)

A second hearing before ALJ David Willis took place via telephone on May 21, 2020, at which the ALJ heard testimony from Petitioner and a vocational expert. (AR 88.) A supplemental hearing took place via telephone on June 30, 2020, at which the ALJ heard testimony from Petitioner, an impartial medical expert, and another vocational expert. (AR 13.) On September 11, 2020, the ALJ issued a written decision finding Petitioner was not under a disability from the alleged onset date of December 12, 2012, and Petitioner's date last insured of September 30, 2017, and therefore found Petitioner is not disabled. (AR 27.)

The ALJ found Petitioner suffers from the severe impairments of cervical

**MEMORANDUM DECISION AND ORDER - 2**

degenerative disc disease; degenerative joint disease of the left shoulder; lumbar

degenerative disc disease; obesity; and migraine headaches. (AR 16.)

The ALJ next determined Petitioner retained the residual functional capacity ("RFC")

to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but with the following

exertional and nonexertional limitations:

> Sit for up to 6 hours in an 8-hour day…stand or walk
> for 2 hours in an 8-hour workday…frequently reach
> overhead with the left upper extremity…frequently
> climb stairs…frequently balance or kneel…
> occasionally stoop and crouch…never climb ladders,
> ropes or scaffolds…never crawl…never be exposed to
> unprotected heights…able to tolerate occasional
> exposure to moving mechanical parts and other
> workplace hazards…off task up to 10% in addition to
> breaks provided to the claimant by law or by the
> claimant's employer and… absent from work one day
> per work month.

(AR 19 - 20.) At step four,[1] the ALJ concluded Petitioner could not perform her past

relevant work as a school bus driver. (AR 26.) The ALJ therefore proceeded to make

findings at step five, concluding Petitioner retained the RFC to perform other jobs that

exist in significant numbers in the national economy, such as document preparer, charge

account clerk, and call out operator. (AR 27.)

---

[1] For a summary of the process, *see Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) ("The five- step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. See id. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).").

Petitioner timely requested review by the Appeals Council, which denied her request on March 18, 2021. (AR 1 – 6.) She timely appealed this final decision to the Court on April 28, 2021. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of Petitioner's date last insured of September 30, 2017, Petitioner was forty-one years of age, which is defined as a younger individual. 20 C.F.R. § 404.1563. (AR 26.) She has a high school education, and her past relevant work as a school bus driver was semi-skilled, and performed at the light exertional level. (AR 26.)

## ISSUES FOR REVIEW

1.      Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony concerning her impairments?

2.      Whether the ALJ erred in evaluating the opinions of Petitioner's treating physician, Dr. Daniel Marsh, and non-examining physician, Dr. John Kwock?

3.      Whether the ALJ's failure to consider lay witness statements constitutes harmless error?

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision, unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the

evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*.

Petitioner challenges the ALJ's step four findings regarding Petitioner's residual functional capacity ("RFC") and her ability to sustain full-time work at a sedentary exertion level. The Court does not find Petitioner's arguments persuasive, as explained below.

## DISCUSSION

### 1.    Subjective Symptom Testimony

The ALJ considered Petitioner's subjective symptom testimony concerning her pain, finding her testimony did not substantiate her allegations of disabling limitations related to her pain. The ALJ concluded that, although Petitioner's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record. (AR 20 – 22.)

In reaching this conclusion, the ALJ relied upon the following reasons: (1) lack of support found in the objective medical evidence; (2) activities of daily living; and (3) statements to medical providers during the relevant period. (AR 21.) Petitioner contends the record as a whole does not support the ALJ's conclusion. She argues that the ALJ's

reasoning is faulty because it relies solely upon medical evidence to dispute Petitioner's testimony; does not explain how Petitioner's on-going, invasive treatment detracts from her testimony; and does not consider the context of Petitioner's activities of daily living. Respondent counters that the ALJ's determination is supported by the record because the objective medical evidence is inconsistent with the level of limitation Petitioner alleges; surgical treatment of her musculoskeletal complaints was successful and her residual pain symptoms are adequately managed; and her activities suggest greater functioning.

### A.    Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)). The claimant does not need to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of her symptoms

only by offering specific, clear and convincing reasons[2] for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[3] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to

---

[2] Respondent claims that the clear and convincing standard conflicts with the Social Security Act and its implementing regulations. Resp.'s Brief at 4 n.2. (Dkt. 19.) However, the United States Court of Appeals for the Ninth Circuit explained in *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020), that an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Id*. at 1277 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). This allows the Court to meaningfully review the ALJ's decision. *Id*. In turn, the reasons for rejecting a claimant's testimony about her symptoms must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g). In other words, the Court should be able to review the portions of the record cited in support of the ALJ's reasons and determine whether the evidence is sufficient to support them.

[3] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n.5.

the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at \*6-7.

### B.    Petitioner's Subjective Complaints

On February 1, 2017, Petitioner completed a function report, explaining she was in a "lot of pain all day," and she experienced pain and numbness down her legs, in her feet, and in her back. (AR 474 – 481.) She stated she takes care of her small dog by taking it outside to the yard, and that she feeds and cleans up after the dog and two cats. (AR 474 – 475.) She explained that she is unable to care for her house, that it is "dirty" as a result, and that it is difficult to dress, bathe, care for her hair, and use the toilet. (AR 475.) Although she could prepare meals, they consisted of prepared meals or easy meals that could last for a couple of days. (AR 476.) She performs household chores such as laundry, dishes, sweeping, and watering her garden, but contends that her house is a mess because it takes longer and she requires assistance from her spouse. (AR 476.) Petitioner is able to drive a car and shop for food and other household items once a week, but stated it took her longer to complete her shopping due to pain. (AR 477.) Her hobbies included swimming, walking, camping,

vacations, shopping, and going to the farmers market, but she "can't do them" because she is in too much pain. (AR 478.) On a regular basis, Petitioner was able to go to the grocery store, and to her therapy, massage, and doctor's appointments. (AR 478.) She estimated she could walk for one-half of an hour, stand less than twenty minutes at a time, and that she could resume walking after a rest of twenty to thirty minutes. (AR 479.)

Petitioner completed a second function report dated March 28, 2017. (AR 508 – 516.) In this report, Petitioner explains her pain prevents her from doing daily chores. (AR 508.) She describes a typical day involves packing her husband's lunch, feeding the animals, resting on a heating pad, and then either going to therapy, massage, or shopping for food depending on the day. (AR 509.) Her husband assists with caring for their small dog and cats. (AR 509.) Similar to her previous report, she described difficulty dressing, bathing, using the toilet, and caring for her hair. (AR 509.) She makes easy meals rather than trying to cook, and she is able to do some chores such as laundry, dishes, and sweeping. (AR 510.) She waters her garden once each week, with her husband's help. (AR 510.) Petitioner is able to shop once a week for thirty minutes for food and other household items. (AR 511.) Her estimate of her physical ability to walk, sit, and stand did not change from her previous assessment. (AR 513.)

Petitioner testified at the hearing on March 22, 2018, that pain — which she experienced in her left shoulder, low back, bilateral lower extremities, and neck — prevented her from lifting more than ten pounds, standing more than twenty minutes at a time, and reaching overhead. (AR 20, 123 – 38.) Her testimony at the hearing is consistent with her two previous function reports. She explained that she experiences pain in her lower and upper

extremities upon exertion, and that sitting and using a computer causes pain in her upper extremities. (AR 132 – 33.) She testified she spends most of her day at home laying down or in her recliner with her feet up to keep pressure off her low back. (AR 129.)

### C.     Analysis

The Court finds the ALJ adequately evaluated Petitioner's subjective symptom testimony. The ALJ first discussed the medical records and treatment history corresponding to Petitioner's low back pain and left shoulder pain, which she injured at work on January 11, 2012, when the school bus she was driving was rear-ended. (AR 589.) Following the accident, on June 5, 2012, Petitioner underwent arthroscopy of the left shoulder with decompression, distal clavicle excision, and repair of a torn labrum. (AR 589, 590.) Later, on October 3, 2012, Dr. Johans performed a foraminotomy over the L5 root, a diskectomy at L4-5 to remove a fragment hitting both L4 roots on the left and right sides,  and a decompression of both L4 and L5 roots. (AR 776.) When her pain did not resolve, she underwent an L3-L5 decompression and stabilization, which surgery was performed by Dr. Hajjar on October 12, 2015. (AR 1494, 1506.) The ALJ explained that Petitioner's past surgical history; relevant examination findings documenting pain and tenderness upon palpation as well as limited range of motion; and treatment with medication, steroid injections, and physical therapy support Petitioner's subjective symptom testimony. (AR 21.)

However, the ALJ explained that other medical records undermined Petitioner's complaints of disabling pain. (AR 21.) For instance, he noted that Kathryn Hite, NP, recorded that, between August 2012 and December 2013, Petitioner exhibited normal range of motion of the spine and no abnormalities of the bilateral extremities. (AR 21.) Hite also charted that

Petitioner's lower lumbar spine was "normal, with no tenderness to paraspinal palpation." (AR 1060.) Examination findings recorded by Molly Roy, PA-C, between November 2012 and October 2017 revealed normal range of motion of the cervical spine, no abnormalities of bilateral extremities, and a normal gait. (AR 21.) For instance, PA-C Roy charted on August 21, 2014, that Petitioner reported no difficulty with walking. (AR 163.)

The ALJ also explained that Drs. Sant and Friedman recorded Petitioner as having a normal unassisted gait upon examination during office visits occurring throughout 2013. (AR 21.) A review of the records relied upon by the ALJ supports the ALJ's factual findings. For instance, following her surgery, on January 2, 2013, Dr. Sant referred Petitioner to aquatic therapy, and he charted that Petitioner had a good gait and posture. (AR 1756.) On January 23, 2013, Petitioner reported that water therapy was helping, and she reported improvement in her pain with medication. (AR 1753.) On February 20, 2013, despite Petitioner's complaints of pain in her back and numbness in her legs and feet, Dr. Sant charted Petitioner "is moving ok. She has a good gait and posture." (AR 1747.) On May 8, 2013, Dr. Sant again noted Petitioner was "moving ok…has a good gait and posture." (AR 1725.) And, on September 23, 2013, Dr. Sant encouraged Petitioner to continue her gym membership. (AR 1717.)

Following Petitioner's second lumbar surgery in 2015, the ALJ noted that imaging reports showed only mild cervical spondylosis, no evidence of hardware failure or signs of abnormal motion with flexion or extension of the lumbar spine, normal gait, minimally diminished strength, and good hardware position with a solid fusion at the L3 – L5 spine. (AR 22.) The Court's review of the records relied upon by the ALJ support these factual findings as well. For instance, a radiology report dated March 8, 2016, noted "no abnormal motion with

flexion or extension." (AR 1488, 1492.) Examination findings from June 19, 2016, revealed no muscle atrophy, no spine deviation, and that Petitioner was "moving extremities well…." (AR 850.) Dr. Hajjar recorded on November 1, 2017, that Petitioner reported her back pain "responded well to massage." (AR 1494.)

The Court finds the ALJ articulated an adequate reason supported by substantial evidence in the record for rejecting Petitioner's testimony concerning the severity of her pain. Although Petitioner accurately states that an ALJ may not disregard Petitioner's testimony solely because it is not substantiated affirmatively by objective medical evidence, *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006), lack of medical evidence is a "factor the ALJ may consider" in his analysis, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ discussed that the record evidence supports Petitioner's complaints of pain, which include two back surgeries, shoulder surgery, and continuing pain management with medication, steroid injections, and physical therapy. (AR 21.) But, he relied upon and discussed the medical records and examination findings that undermined Petitioner's subjective complaints as to the severity and limiting effects of her pain. (AR 21 – 22.) By contrasting the records, the ALJ supplied a specific, clear, and convincing reason to discount Petitioner's testimony that the severity of her pain precludes her from performing work at the sedentary exertion level.

In considering Petitioner's testimony regarding her activities of daily living, the ALJ explained that her daily activities and reports to treatment providers "do not support her subjective complaints." (AR 22.) The ALJ noted that, despite Petitioner's two spine surgeries

and shoulder surgery, she was able to attend medical appointments, perform household chores,[4]

care for multiple pets, prepare meals, drive, shop in stores, and use the internet. (AR 22.) She

reported also to treatment providers that she was able to drive,[5] walk on a treadmill,[6] garden,[7]

assist her husband in the mornings, walk to get around,[8] attend parties,[9] and travel.[10] (AR 22.)

Although the evidence of Petitioner's activities may also support an interpretation more

favorable to Petitioner, the Court finds the ALJ's interpretation was rational, and the Court must

uphold the ALJ's decision "where the evidence is susceptible to more than one rational

interpretation." *Magallanes v. Bowen*, 881 F.2d747, 750 (9th Cir. 1989). If a "claimant engages

in numerous daily activities involving skills that could be transferred to the workplace, the ALJ

may discredit the claimant's allegations upon making specific findings relating to those

activities." *Burch*, 400 F.3d at 681; *see Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999)

(claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his

friend's child was evidence of claimant's ability to work).

While the ALJ could have been more specific as to the skills involved in Petitioner's

activities that are transferrable to the workplace, the ALJ's path "may reasonably be discerned."

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). In listing

---

[4] Petitioner reported on December 1, 2014, that she was able to be on her feet a total of "four hours per day, interspersed throughout the day." (AR 1705.)

[5] Petitioner reported to her provider on December 5, 2012, that she is able to drive, although her pain reportedly increased if she sat or drove for very long. (AR 1759.)

[6] On April 9, 2013, Petitioner reported her leg went numb while walking on a treadmill. (AR 1735.)

[7] Petitioner reported "weeding in her garden" on May 26, 2016. (AR 1191.)

[8] Petitioner reported to her provider on February 24, 2016, that she "did lots of walking…currently does a lot of shopping and walking and she has been attending PT consistently…." (AR 1228.)

[9] On April 25, 2017, Petitioner reported attending a party. (AR 1697.)

[10] On September 26, 2017, Petitioner reported traveling to Seattle, which included driving and walking. (AR 1688.)

Petitioner's daily activities, the ALJ adequately noted the contradictions between her reported activities and her asserted limitations due to pain. The ALJ found that, while Petitioner's symptoms could reasonably be expected to produce pain, her pain did not preclude her from all sedentary work. The ALJ relied upon Petitioner's self-reports to providers and on her function reports that she was active for a significant period of each day, taking care of pets, fixing her husband's lunch, preparing dinner, and venturing out of the home to shop and attend medical appoints. At other times, she was able to sit in her recliner. *See, e.g., Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (ALJ may reasonably conclude that, if, despite claims of pain, a claimant "is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."). Based upon its review of the record, the Court finds substantial evidence supports the ALJ's RFC finding that Petitioner could sustain the reaching, sitting, walking and standing requirements of sedentary work with additional limitations based upon her daily activities.

Importantly, the ALJ did not entirely reject Petitioner's reports of pain. Within the RFC determination, the ALJ made an allowance for Petitioner's pain by allowing for Petitioner to be off task up to 10% in addition to breaks provided by law or by the employer, and allowed for an absence from work one day per month. (AR 20.) Petitioner does not explain why these accommodations would not adequately account for her pain symptoms during an eight-hour workday. Further, the ALJ's RFC determination indicates he did not discredit Petitioner's testimony entirely, and he incorporated limitations he found were reasonably supported by Petitioner's testimony about her pain. *Thomas v. Barnhart*, 278 F.3d 947, 958 – 59 (9th Cir.

2002).[11]

The Court finds the ALJ supplied clear and convincing reasons supported by substantial evidence in the record as a whole to reject Petitioner's subjective symptom testimony regarding the severity of her pain. The ALJ identified evidence that undermined Petitioner's complaints, and found such evidence credible. This evidence contradicted Petitioner's contentions as to how debilitating her pain was during the relevant period. Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, the Court's role is not to second-guess that decision. *Fair v. Bowen*, 885 F.2d at 604.

### 2.    Medical Opinions

#### A.    Legal Standard[12]

Petitioner argues the ALJ improperly weighed the medical opinion evidence, contending that the ALJ committed reversible error in his evaluation of the opinions of Daniel Marsh, M.D., and John Kwock, M.D. Dr. Marsh, a pain specialist, treated Petitioner's orthopedic conditions, while Dr. Kwock testified at the hearing on June 30, 2020.

In social security cases, there are three types of medical opinions: "those from treating

---

[11] Petitioner argues the ALJ failed to provide a nexus between her on-going, invasive treatment involving epidural steroid injections and her testimony, or explain why this treatment either supports or detracts from Petitioner's symptom allegations. Pet. Brief at 14. (Dkt. 18.) However, the ALJ did not indicate he relied on this evidence as a reason for his determination that Petitioner's pain was not so severe as to preclude her from all work. (AR 21.) Rather, the ALJ clearly cites three reasons – objective medical evidence, activities of daily living, and statements to medical providers as reasons for finding Petitioner's pain was not as severe as she alleged. (AR 21.) Instead, it appears the ALJ credited this evidence and provided for accommodations in the RFC to account for Petitioner's subjective pain symptoms. (AR 19 – 20, 21.)

[12] The agency has amended the regulations governing medical opinions, but they apply only to claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The ALJ correctly applied the rules applicable to Petitioner's claim, which was filed on December 13, 2016. *See* 20 C.F.R. § 404.1527.

physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo*, 871 F.3d at 675 (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (stating that a well-supported opinion by a treating source which is not inconsistent with other substantial evidence in the case record "must be given controlling weight; i.e. it must be adopted.").

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining, reviewing physician's opinion. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d). In addition, the regulations give more weight to opinions that are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists, *see id*. § 404.1527(d)(5).

Should the ALJ decide not to give a treating physician's opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*

*v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

However, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (citation omitted); *see also* SSR 96-2P, 1996 WL 374188 at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

### B.   Medical Opinions

Dr. Marsh, Petitioner's treating provider, provided two opinions – one dated April 5, 2018, and a second dated April 23, 2020. (AR 1785, 2026.) In his opinion, Petitioner was able to engage in work at the less than sedentary exertional level because she was limited to one hour of standing or walking in an eight hour day, and sitting for 1 hour in an eight hour

day. (AR 25, 1785 – 86, 2026 – 27.) The ALJ gave "little weight" to Dr. Marsh's opinions because they were outside the period under consideration; they were not supported by his own physical examination findings during the relevant period; and they were not supported by Petitioner's activities of daily living. (AR 25.)

Dr. Kwock testified at the June 30, 2020 hearing and provided his opinions as an impartial medical expert. Dr. Kwock is board certified in orthopedic surgery, and he provided a medical opinion regarding Petitioner's physical residual functional capacity during the period between Petitioner's alleged onset date and her date last insured. (AR 44.) In Dr. Kwock's opinion, Petitioner retained the physical RFC to perform sedentary work, with the following additional limitations: sit for six hours in an 8-hour day; stand and walk for two hours in an 8-hour day; frequent overhead reaching with the left upper extremity; occasional crouching and stooping; frequent climbing of stairs, ramps, balancing, and kneeling; never climb ladders, scaffolds or crawl; no exposure to unprotected heights; and occasional work in proximity to heavy or moving machinery.[13] (AR 48-49.) Dr. Kwock disagreed with the two opinions provided by Dr. Marsh in terms of the sit-stand options, and Dr. Kwock testified that he relied upon the objective evidence present in the record in formulating an RFC. (AR 51.)

Dr. Kwock explained that Petitioner's May 2020 MRI showed mild or minimal disease of the lumbar spine post fusion, and thus he was of the opinion that the objective findings did not support any further limitation to Petitioner's ability to sustain the walking, sitting, and standing requirements of work at the sedentary exertion level. (AR 52 – 53, 56 – 57.) Dr. Kwock did allow, however, for additional rest periods during the morning and during

---

[13] The ALJ's RFC finding largely mirrors Dr. Kwock's opinions. (AR 19.)

the afternoon to account for Petitioner's "total condition," or combination of impairments, such that she should be allowed two additional break periods during the morning and afternoon of five minutes each. (AR 62 – 63, 65 – 67.)

The ALJ gave "great weight" to Dr. Kwock's opinion because it is based upon the objective medical evidence of record, including Petitioner's history of spine impairments and surgeries; it is consistent with the administrative findings of Dr. Michael Spackman; and more restrictive limitations are not supported by Petitioner's activities of daily living. (AR 23.) These activities included Petitioner's ability to attend medical appointments, perform household chores, care for pets, prepare meals, drive a motor vehicle, shop in stores, pay bills, handle a savings account, and use the internet. (AR 23.) The ALJ also noted that Petitioner reported to her treatment providers that she could walk on a treadmill, engage in gardening activities, assist her husband in the mornings, travel to Seattle, Washington, attend parties, and walk to "get around during the relevant period." (AR 23.)

### C.   Analysis

The Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence to reject the opinions of Dr. Marsh and instead credit Dr. Kwock's opinions. The ALJ rejected Dr. Marsh's opinions because they were not supported by his own physical examination findings prior to Petitioner's date last insured. (AR 25.) An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992.) The ALJ specifically referred to chart notes wherein Dr. Marsh found the claimant alert and oriented with normal curvature of the spine, minimally diminished strength of the left upper

extremity, intact sensation of the bilateral extremities, and a normal unassisted gait. (AR 25.)

A review of the medical records the ALJ referred to between April 12, 2017, and September 30, 2017, supports the ALJ's findings. For instance, on April 25, 2017, despite Petitioner reporting severe pain to the point she "can't move," Dr. Marsh's examination findings revealed Petitioner was in "no acute distress…spinal curves grossly WNL…muscle tone WNL….Heel walking normal. Toe walking weak on the left." (AR 1697.) On June 9, 2017, Petitioner reportedly could "barely walk," but Dr. Marsh again charted that Petitioner was in "no acute distress….Heel walking normal." (AR 1695.) Petitioner also reported to Dr. Marsh that she was having a fair amount of pain control with medication and her activity level improved. (AR 1695.) On August 1, 2017, Petitioner again reported "doing well with the pain medication…it is effective." (AR 1691.) Dr. Marsh charted that Petitioner did not appear to be in any acute distress, muscle tone was within normal limits, and heel walking was normal. (AR 1691.) The final treatment note prior to Petitioner's date last insured, dated September 26, 2017, reveals Petitioner traveled to Seattle, and was able to drive and walk during that trip. (AR 1688.) Dr. Marsh again charted that Petitioner's heel walking was normal, and that she had a normal station and gait. (AR 1688.)

The ALJ also rejected Dr. Marsh's opinions on the grounds they were inconsistent with Petitioner's activities of daily living and her statements to medical providers prior to her date last insured. (AR 25.) Conflicting daily activities and reports to providers constitute specific and legitimate reasons for rejecting a physician's opinion. *Batson*, 359 F.3d at 1195. As discussed above, the Court finds these reasons are specific and legitimate reasons

supported by substantial evidence in the record for discrediting Dr. Marsh's opinions.[14]

Next, Petitioner challenges the ALJ's determination to afford great weight to Dr. Kwock's opinions. She contends the ALJ erred because Dr. Kwock's opinions do not adequately account for Petitioner's subjective symptom allegations. However, the ALJ adequately explained his rationale for affording Dr. Kwock's opinion great weight. The ALJ specifically noted that Dr. Kwock relied upon Petitioner's surgical history and imaging reports, and that his opinions were consistent with the findings of Dr. Michael Spackman. (AR 23.) Finally, the ALJ noted that Dr. Kwock's opinions were more consistent with Petitioner's reported daily activities. (AR 23.)

The Court finds the ALJ's explanation comports with the requirements of 20 C.F.R. § 404.1527(c)(2). For instance, the ALJ explained that Dr. Kwock supported his medical opinions by referring to the record and Petitioner's medical history. The ALJ considered also other factors, such as consistency of the opinions with the record as a whole. Moreover, Petitioner does not challenge the ALJ's third reason – Petitioner's daily activities – which the Court discussed above and which provides another rationale for finding Dr. Kwock's opinions may be afforded more weight.

The Court therefore finds the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Marsh's opinions, and complied with 20 C.F.R. § 404.1527(c)(2) in his evaluation of Dr. Kwock's opinions.

---

[14] Petitioner also challenged the ALJ's reason for rejecting Dr. Marsh's opinions because they were rendered outside the relevant time period. However, medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition, as they may bear upon the severity of the condition before expiration. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Nonetheless, the ALJ provided three alternative reasons for rejecting Dr. Marsh's opinions.

3.      **Lay Witness Testimony**

Petitioner contends the ALJ erred by failing to provide germane reasons to discount the lay witness statements by Petitioner's family members, friends, and spouse. Pet. Brief at 16. (Dkt. 18.) Respondent maintains that Petitioner failed to show prejudicial error, because the lay witness statements describe the same subjective complaints that the ALJ rejected when he considered Petitioner's subjective symptom testimony. Resp.'s Brief at 8. (Dkt. 19.)

A.      **Legal Standard**

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4) (effective prior to March 27, 2017); *Robbins*, 466 F.3d at 885. Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must consider, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis*, 236 F.3d at 511–12. When rejecting third party statements which

are similar in nature to Petitioner's statements, the ALJ may cite the same reasons used in rejecting the claimant's statement. *See Valentine*, 574 F.3d at 694 (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

The Court therefore finds no error.

## B.     Analysis

The record contains eight written statements from Petitioner's family members and friends, as well as hearing testimony from Petitioner's husband.[15] (AR 25.) These statements generally recount Petitioner's struggles due to her pain. (AR 539 – 550.) Several statements report Petitioner needed assistance to complete household chores like cooking and vacuuming. (AR 547.) The ALJ found these statements unpersuasive because they are not supported by the objective medical evidence, Petitioner's activities of daily living, or Petitioner's statements to medical providers during the relevant period. (AR 25.)[16] Based upon the Court's discussion above, the same valid reasons the ALJ gave for finding Petitioner's subjective symptom testimony less than fully supported apply equally to the lay witness statements. *Valentine*, 574 F.3d at 694.

## CONCLUSION

Based upon the Court's discussion, the Court will affirm the Commissioner's decision.

---

[15] Petitioner's spouse testified at the hearing held on March 22, 2018, before ALJ Wolff. (AR 102.)

[16] The ALJ also gave little weight to the third party statements because the individuals are not medically trained, and are not objective third parties. (AR 25.) However, these are not germane reasons to discount competent lay witness testimony. *Sanderson v. Berryhill*, No. 1:16-CV-00242-CWD, 2017 WL 3974235, at *8 (D. Idaho Sept. 8, 2017). Respondent conceded as much when she did not respond to Petitioner's argument that these reasons were insufficient to discredit competent lay testimony.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, it is hereby ORDERED that the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is DISMISSED.

DATED: September 30, 2022

Honorable Debora K. Grasham
United States Magistrate Judge